IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

JEANETTE KENNETT,
AARON PHILIPS, and ASHLEY
KENNETT,

  PLAINTIFFS,

vs.           CASE NO. CV 05-J-2359-NW

SONIC RESTAURANTS, INC., SONIC
INDUSTRIES, INC., and SDI OF
MUSCLE SHOALS, ALABAMA,

  DEFENDANTS.

## MEMORANDUM OPINION

Pending before the court is the defendants' motion to dismiss claims of Ashley Kennett and Aaron Phillips (doc. 7), defendants' motion to compel arbitration or, alternatively, to stay action pending arbitration as to plaintiff Jeanette Kennett (doc. 9), the response of plaintiffs Ashley Kennett and Aaron Phillips to defendants' motion to dismiss (doc. 14), and plaintiff Jeannette Kennett's response to defendants' motion to compel arbitration (doc. 15).

In reviewing a motion to dismiss, the court must "accept the allegations of the complaint as true and construe them 'in the light most favorable to the plaintiff.'" *Simmons v. Sonyika*, 394 F.3d 1335, 1338 (11th Cir.2004); citing *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir.2003). A motion to dismiss is granted "only when the

movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Sonyika*, 394 F.3d at 1338, citing *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1187 (11th Cir.2004)(quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). *See also Jackson v. Okaloosa County, Fla.,* 21 F.3d 1531, 1534 (11th Cir.1994)(stating that the court "must accept as true the facts stated in the complaint and all reasonable inferences therefrom").

Having considered said motion and plaintiff's response, the court finds as follows:

Plaintiff Ashley Kennett is plaintiff Jeannette Kennett's daughter. Complaint, ¶ 19. Plaintiff Aaron Phillips is plaintiff Jeannette Kennett's son-in-law. Complaint, ¶ 19. Plaintiffs Ashley Kennett and Aaron Phillips were also employed at the defendant restaurant and assert that they were terminated by defendant because of their relationship to defendant Jeannette Kennett. Complaint, ¶¶ 19-20. Defendants argue that, even accepting all of the allegations of the complaint as true, these plaintiffs must be dismissed as they fail to allege that they, individually, engaged in any activity protected by Title VII. Motion to dismiss, ¶ 4. Rather, these plaintiffs' claims are based solely on their relationship to plaintiff Jeannette Kennett, who does allege that she engaged in a protected activity. Motion to dismiss, ¶ 5. Defendants

argue that no action for "association" retaliation exists and that no such cause of action has been recognized by the Eleventh Circuit Court of Appeals.  Motion to dismiss, ¶¶ 5-6.  The plaintiffs agree that the Eleventh Circuit has not addressed this issue, but believe that, given the opportunity, the Eleventh Circuit will recognize such a cause of action.  Plaintiffs' response, ¶ 1.

The court has considered the arguments set forth by the parties on this issue. The line of cases which support defendants' argument can be summarized as set forth by the Eighth Circuit Court of Appeals in *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 819 (8th Cir.1998):

> We believe that the rule advocated by Thomas – that a plaintiff bringing a retaliation claim need not have personally engaged in statutorily protected activity if his or her spouse or significant other, who works for the same employer, has done so – is neither supported by the plain language of Title VII nor necessary to protect third parties, such as spouses or significant others, from retaliation. *See Holt v. JTM Indus., Inc.,* 89 F.3d 1224, 1226-27 (5th Cir.1996), *cert. denied,* 520 U.S. 1229, 117 S.Ct. 1821, 137 L.Ed.2d 1029 (1997). Title VII already offers broad protection to such individuals by prohibiting employers from retaliating against employees for "assist[ing] or participat[ing] in any manner"in a proceeding under Title VII. Accordingly, we hold that a plaintiff bringing a retaliation claim under Title VII must establish that she personally engaged in the protected conduct.

In contrast, the plaintiffs' position is well reflected in the Sixth Circuit case of *E.E.O.C. v. Ohio Edison Co.,* 7 F.3d 541, 544 (6th Cir.1993):

> Such a construction of Title VII would produce absurd and unjust results, for while plaintiff's husband might be in a position to seek injunctive relief to prohibit future reprisals against his spouse, he would certainly not be in a position to seek back pay and/or retroactive promotion based on his spouse's employment denial. Thus, unless plaintiff herself is permitted to seek relief based on the denial of her employment application, the "make whole" purpose of Title VII would be frustrated. Such a result would contravene the express legislative history of Title VII, *see Albemarle Paper Co. v. Moody,* 422 U.S. 405, 419-22, 95 S.Ct. 2362, 2372-74, 45 L.Ed.2d 280 (1975), and would be unacceptable to this Court ....
>
> We agree with the reasoning of the *DeMedina* court that a plaintiff's allegation of reprisal for a relative's antidiscrimination activities states a claim upon which relief can be granted under Title VII. We thus reject the conclusion of the district court in the present case that third parties, who have not actually engaged in protected activities themselves, can never sue under 42 U.S.C. § 2000e-3(a).

Although not cited by any of the parties, the court notes that the recent case of *Singh v. Green Thumb Landscaping*, 390 F.Supp.2d 1129 (M.D. Fla.2005), considered both sides of this dispute in some depth. After a carefully reasoned analysis, the Court in *Singh* held that the better line of thought was to prohibit a cause of action under Title VII for retaliation based solely on one's association with another person who engaged in protected activity:

> Plaintiff's argument that *Bailey* and *DeMedina* support his contention that the Court should go beyond the plain language of Title VII is not well taken. First, *Bailey* does not support the proposition that courts should always go beyond the plain meaning of the statute when analyzing the anti-retaliation provision of Title VII .... Second, *DeMedina,* a trial court case in the District of Columbia Circuit, did not

> consider the broader policy implications of courts creating causes of action when the plain language of the statute fails to support such an interpretation. While allowing employers to retaliate via friends and family would appear to be in significant tension with the overall purpose of the anti-retaliation provision, which is intended to promote reporting of discrimination claims, prohibiting such claims is not "an absurd outcome that contravenes the clearly expressed intent of the legislature." *Fogleman v. Mercy Hospital,* 283 F.3d 561, 569 (3d Cir.2002). Congress may have thought that the relatives and friends who are at risk for retaliation will have participated in some manner in a co-worker's charge of discrimination. *Id.* Furthermore, Congress, in enacting the anti-retaliation provision, may have feared that expanding the class of potential anti-discrimination plaintiffs beyond those who have engaged in protected activity would lead to frivolous law suits and would impinge on an employer's ability to fire at-will employees. *Id.* at 570..... [T]he Court rejects Defendant's argument that the Court should go beyond the plain meaning of the anti-retaliation provision and imply a cause of action based solely on the close association between a plaintiff and the party who engaged in the protected activity. The preference in favor of following the plain meaning of the statute is based on the constitutional separation of powers. Congress makes the law, and the judiciary interprets it. *Id.* at 569. Therefore, the Court finds that Plaintiff does not have a cause of action for retaliation based solely on his close association with his wife who engaged in protected activity.

*Singh v. Green Thumb Landscaping, Inc.*, 390 F.Supp.2d at 1138. *See also Miller v. Bed, Bath & Beyond, Inc.*, 185 F.Supp.2d 1253, 1273 (N.D.Ala.2002).

The Court in *Singh* considered another argument set forth by plaintiffs here as well, namely that the EEOC's compliance manual considered retaliation against a spouse to be unlawful. Plaintiffs' response, ¶ 6. That Court stated:

> [T]he EEOC Compliance Manual simply cites *EEOC v. Ohio Edison*

> *Co.,* 7 F.3d 541, 544 (6th Cir.1993), and *Thurman v. Robertshaw Control Co.,* 869 F.Supp. 934, 941 (N.D.Ga.1994), in support of its conclusion that Title VII's anti-retaliation clause supports a close association third party retaliation claim. This provision of the Manual is entirely lacking in the extensive analysis and thoroughness necessary to be entitled to substantial deference by the Court .... Because the plain and unambiguous language of Title VII differs from this provision of the EEOC Compliance Manual and because the Compliance Manual is not the product of adjudication or notice-and-comment rulemaking, the Court finds that this provision of the Compliance Manual is not persuasive on the issue of whether Plaintiff has a cause of action based solely on his close association with his wife who engaged in protected activity.

*Singh*, 390 F.Supp.2d at 1137 -1138.  The court again finds the rationale of that court to be persuasive on this argument of the plaintiffs.

Having considered both sides of this unsettled issue, the court is of the opinion that the more supportable conclusion is that no cause of action exists for a claim of termination based on association or relationship with someone who has engaged in protected activity.  42 U.S.C. § 2000e-(3) simply does not support such a cause of action for friends and family.   The section states that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C.

§ 2000e-3(a). This language is not difficult to understand and requires no interpretation by this court. Quite clearly, if plaintiff Jeannette Kennett's daughter and son-in law opposed an unlawful employment practice by the defendants, or assisted Jeannette Kennett in some manner in bringing her claim of retaliation, they have stated a cause of action. Without such allegations, there is no cause of action stated.[1]

The court is therefore of the opinion that the defendants' motion to dismiss the claims of plaintiffs Aaron Phillips and Ashley Kennett (doc. 7) is due to be granted. The court shall so Order.

Also pending before the court is the defendants' motion to compel arbitration or, alternatively, to stay action pending arbitration as to plaintiff Jeannette Kennett (doc. 9) to which the plaintiff responded (doc. 15). According to defendants, defendant SDI of Muscle Shoals, Alabama ("SDI") had three partners: defendant Sonic Restaurants, Inc., non-party Harry Sheffield, and plaintiff Jeannette Kennett.

---

[1] Although the vast majority of cases on both sides of this issue have concerned claims by spouses and significant others, no case finding a cause of action based on relationship has so limited it. The court is concerned that, should such an exception to 42 U.S.C. § 2000e-3(a) be recognized by this Circuit, it has no logical cut-off point. In other words, if a spouse may sue for termination based on association with another employee who has engaged in protected activity, should this extension of 42 U.S.C. § 2000e-3(a) include other family members? How close of a relation must a person then be? Is a son-in-law a close enough relative? A first cousin? A close friend? The court cannot, without explicit Congressional authorization, find that Congress just "forgot" to give all of these co-employees a cause of action should they suffer an adverse employment action after a claim of retaliation by the relative/associate arises.

Motion to compel, ¶ 1.  This plaintiff had been employed by SDI as an assistant manager.  According to defendants, on or about March 1, 2004, she voluntarily terminated her employment with SDI to become a partner in the business. Declaration of Doug Koestel, ¶ 6.  Kennett was therefore an "owner" and not an "employee" of defendant SDI. Koestel declaration, ¶ 7. Pursuant to the Assignment and Assumption Agreement, plaintiff Jeannette Kennett became a fifteen percent (15%) owner in SDI as the "Working Partner/Manager."  Exhibit A to Koestel declaration.  Under this agreement, plaintiff shared in the cash distributions and profits and losses of the company in proportion to her percentage of ownership. Exhibit A to Koestel declaration, ¶ 4(c).  She was also given a guaranteed payment semi-monthly, and informed that she could be terminated by defendant SRI. *Id*., ¶¶ 4(a), 7(a) and (c).

   Also submitted by defendants is the First Restated General Partnership Agreement of SDI of Muscle Shoals, Alabama Partnership.  Exhibit B to Koestel declaration.  This agreement is between SRI as the Managing Partner and SII as the Supervising Partner.  Under this agreement, the "Working Partner shall work as the manager of the Restaurant full time and shall have responsibility for the day-to-day operation of the Restaurant, subject to the supervision of the Supervising Partner." Exhibit B, ¶ 13.  Guaranteed payments to the Working Partner are noted to be

expenses of the Partnership, and may be paid wither or not the Partnership operated as a profit. *Id*.   This agreement also states that "[t]he following provisions shall apply to any controversy between the other partners of the Partnership and the Managing Partner and relating (a) to this Agreement ... or (b) to the parties' business activities with the Managing Partner.... Id., ¶ 24. The following provisions include that the parties must use final and binding arbitration to resolve the controversy. Id., ¶ 24 (a). This agreement was signed by the Managing Partner and the Supervising Partner.[2] In the Assignment and Assumption Agreement signed by plaintiff Jeannette Kennett, is the following:

> 3. <u>Assumption of General Partnership Agreement or Operating Agreement</u>. You acknowledge your receipt of the General Partnership Agreement or the Operating Agreement of the Company ... which is attached as Exhibit "A", and agree to become bound by its terms as of the Effective Date.

Assignment and Assumption Agreement, ¶ 3. The court finds this agreement to be bound by the terms of the General Partnership Agreement dispositive of the issues raised in the defendants' motion to compel arbitration and the plaintiff's response thereto. Plaintiff was terminated by the partnership. She claims this termination was

---

[2]The named Supervising Partner is not Harry Sheffield, but rather SII. No explanation of Sheffield's assumption of the Supervising Partner role is given by defendants. However, in the affidavit of Edward Saroch, attached to the motion to dismiss of SII (doc. 8), the allegation is made that SII has no ownership in SDI. Saroch declaration, ¶ 2.

wrongful and in violation of federal law. The court is of the opinion this constitutes "any controversy between the other partners of the Partnership and the Managing Partner ... and relating (a) to this Agreement ... or (b) to the parties' business activities with the Managing Partner, whether or not related to the Partnership." General Partnership Agreement, ¶ 24.

The plaintiff argues that plaintiff really was an employee, and further that her Title VII claims are not subject to the arbitration agreement. The court has found scant case law on the issue of whether a partner can be an employee for purposes of Title VII. The court finds no need to make this determination. Either way, the plaintiff signed the agreement in question, which incorporated the Partnership Agreement providing for arbitration. The court has no doubt that, even as an employee/partner, the claims of the plaintiff are subject to arbitration. Pursuant to the Assignment and Assumption Agreement signed by the plaintiff, her role as manager/Working Partner could be terminated by SRI. According to plaintiff's own allegations, SRI exercised that option. Therefore, any dispute as to whether that termination was in violation of plaintiff's federal rights is necessarily covered by that Agreement, and hence the General Partnership Agreement, including the arbitration clause, by which the plaintiff had agreed to be bound.

The court has considered the plaintiff's arguments to why that agreement

should not be enforced.  However, the court finds the law of this Circuit is quite clear that arbitration agreements, concerning employment claims or otherwise, are valid, enforceable, and binding.  *See e.g.*, *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir.2005) ("The FAA embodies a "liberal federal policy favoring arbitration agreements");  *Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1258 (11th Cir.2003) ("[T]he Supreme Court, in reviewing a case from this circuit, made clear that the strong federal preference for arbitration of disputes expressed by Congress in the Federal Arbitration Act (the "FAA") must be enforced where possible.")*; Lemmon v. Lincoln Property Co.*, 307 F.Supp.2d 1352 (M.D.Fla.2004); *Wright v. Circuit City Stores, Inc.,* 82 F.Supp.2d 1279, 1284 (N.D.Ala.2000) ("Undoubtedly, Circuit City has agreed to be bound to arbitrate at least a specified class of claims: those brought by associates .... No consideration above and beyond the agreement to be bound by this process was necessary to validate the contract .... As long as there are binding promises by each party to the other, there is adequate consideration for a valid contract.").

    Regardless of whether plaintiff Jeannette Kennett is considered an employee or a partner for purposes of her claims, she signed an agreement by which she agreed to arbitrate her claims against the managing partner.  The managing partner is SRI.  SRI is a named defendant in her claim.  In fact, in her Charge of Discrimination, the

plaintiff lists SRI as an employer and states that the employer has more than 500 employees. Complaint, exhibit 1. In her response, the plaintiff asserts that her claims concern her employment by the partnership, not any business activities with SRI. Response, ¶ 8. The court finds these statements contradictory. Assuming the court was inclined to allow the plaintiff to proceed under Title VII, she is bound by the "employer" named in her EEOC charge. As the court is convinced that SDI does not have 500 employees, the plaintiff must have believed her claims to be against SRI when she completed her charge of discrimination.[3]

Having considered the foregoing, and being of the opinion that the defendants' motion to compel arbitration is due to be granted and the court shall so Order.

**DONE** this the 31st day of January, 2006.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

---

[3] Furthermore, the court has no evidence before it that, as an employer, SDI has more than fifteen employees.